899 F.2d 14
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jasper LOVE, Plaintiff-Appellant,
v.
KENT COUNTY ROAD COMMISSION and Bruce Bigelow, jointly and
severally, Defendants-Appellees.
 No. 89-1232.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1990.
 
 Before MERRITT, Chief Judge, and NATHANIEL R. JONES, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff, Jasper Love, appeals the district court's summary dismissal of his suit alleging racial harassment in the work place in violation of federal and state laws. We affirm.
 
 I.
 
 2
 Jasper Love, who is black, was hired by the Kent County Road Commission ("the Commission") in September 1983 as a laborer in the maintenance department. The Commission, a separately incorporated entity of Kent County, Michigan, repairs and maintains Kent County roads and highways. After a successful probationary period as a laborer, Love was promoted to "truck driver," a position which entails blacktopping, among other duties. By his own account, Love's first two years of employment at the Commission were without notable incident with respect to his relations with co-workers. The year 1985, however, marked the beginning of a conflict-ridden relationship between Love and Bruce Bigelow, a white Commission employee who was promoted to the position "Foreman I" in April 1985. Bigelow supervised Love.
 
 
 3
 Love explained during his deposition that prior to Bigelow's promotion to Foreman I, he and Bigelow "never had any problems." J.App. at 69. Thereafter, however, the following incidents occurred. Love first attributes to Bigelow reprimands he received for being late to work on two occasions. Love maintains that Bigelow reprimanded his tardiness while excusing the attendance of white employees under his supervision. Id. at 6. Although he concedes that Bigelow has no authority to discipline him for being late, Love suspects that Bigelow may have reported his attendance to Darwin Nellist and Dick Johnson, two members of the Commission's "management team" who do possess authority to issue reprimands for tardiness.
 
 
 4
 The next incident Love complains of is a physical altercation that occurred between Bigelow and him on September 19, 1986. The record reveals that on this date Love drove the # 675 Commission truck to the I-196 ramp at Lake Michigan Drive to do road repair work. Love was accompanied by a co-worker. Bigelow was present at the work site. Once he unloaded blacktop from his truck, Love assisted other workers in shoveling the blacktop. Love explains, however, that he had to return to the truck and "move it ahead" before he could begin shoveling again. Love reports that while he was in the truck, Bigelow began pointing at him and yelled "get out and get back here and help us shovel." Id. at 42. Love followed Bigelow's command. After doing some shoveling, Bigelow told Love he could leave the site. Love, along with the co-worker with whom he came, got into the truck and started to drive off. As he was departing, Love, already annoyed at Bigelow, witnessed Bigelow speaking to another employee and apparently had reason to believe that the two were discussing him. Love backed up the truck and asked Bigelow what he said to the other worker. Bigelow instructed Love that he "had better go patching," and during a further exchange said to Love "[y]ou better get in the truck and go patching if you want your job Boy." Id. at 42. An indignant Love began pointing his finger in Bigelow's face as the two argued. Bigelow pushed Love's hand down; thereafter fisticuffs ensued, each man blaming the other for instigating it.
 
 
 5
 Love reported this incident upon his return from the work site. On October 1, 1986, Love was arrested on charges of assault and battery as a result of his altercation with Bigelow. He was also given three days' suspension without pay. Love complains of racial discrimination because the Commission believed only Bigelow's account of the altercation and sanctioned Love with three days' suspension while failing to reprimand Bigelow.
 
 
 6
 Sometime following the altercation, Love was handed racially derogatory materials by a white co-worker named Tom Woodhead. Woodhead, who intended that the material be a joke, stated "Bruce [Bigelow] told me to give this to you." Id. at 97. Love was offended by the material but filed no grievance with his union and did not otherwise pursue the matter. Although Love attributes his receipt of the material to Bigelow, he admittedly does not know whether Bigelow gave the material to Woodhead. Receiving the racially derogatory fliers is the only incident of an overt racial slur that Love has encountered since his employment with the Commission.
 
 
 7
 On January 27, 1988, Love, through his counsel, filed a five-count complaint in the United States District Court for the Western District of Michigan, alleging violations of (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq.; (2) 42 U.S.C. Sec. 1981; (3) 42 U.S.C. Sec. 1983; (4) Michigan's Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. Sec. 37.2202; and (5) a tort claim of intentional infliction of mental distress. Love alleged that he was racially harassed by fellow employees of the Kent County Road Commission ("the Commission") and named as defendants the Commission and Bruce Bigelow. On December 29, 1988, the Commission and Bigelow moved for dismissal of Love's complaint, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. On January 18, 1989, in a bench ruling, Judge Bell granted summary judgment for the defendants.
 
 
 8
 The district court granted summary judgment for Bigelow and the Commission on Love's Title VII, Elliott-Larsen and section 1981 claims because the incidents of alleged harassment were too sporadic and isolated to support these claims. The court held that Love could not allege disparate treatment based on his three-day suspension following his altercation with Bigelow because Love had been the aggressor and thus was not similarly situated. With respect to Love's section 1983 claim against the Commission, the court found that the Commission had no policy or custom which encouraged Bigelow's alleged conduct and therefore could not be held liable for his actions. Finally, the court rejected Love's intentional infliction of emotional distress claim, finding that none of the behavior Love alleged was extreme and outrageous, as required by the Michigan courts. Love, proceeding pro se, has filed this appeal.
 
 II.
 
 9
 Love contends that the district court erred in holding that the incidents alleged in his complaint--the write-ups for tardiness, the altercation and "boy" reference, the three-day suspension, and the racially derogatory flier--are insufficient to sustain his racial harassment claims. We review the district court's grant of summary judgment de novo. Pinney Dock & Transport Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.1988). Fed.R.Civ.P. 56(c) instructs that summary judgment is to be entered for a party if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The nonmoving party must make a showing adequate to establish the existence of an essential element of his case on which he would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 10
 Love's Title VII and Elliott-Larsen Act claims may be analyzed contemporaneously because Michigan courts apply Title VII case law to race discrimination claims brought under the Elliott-Larsen Act. Farmington Education Association v. Farmington School District, 133 Mich.App. 566, 573, 351 N.W.2d 242, 245-46 (1984).[1] Insofar as Love bases his Title VII and Elliott-Larsen claims on the fact that he received a three-day suspension from work as a result of his fight with Bigelow while Bigelow was not reprimanded at all, the district court correctly noted that Love cannot raise a disparate treatment claim because he is not similarly situated to Bigelow. Specifically, the record supports the district court's conclusion that Love was the aggressor and therefore deserved punitive treatment. While the offensiveness of Bigelow's use of the term "boy" to refer to Love cannot be ignored, Love never would have suffered this insult if he had not backed up his truck to begin a confrontation with Bigelow. In anger, Love pointed in Bigelow's face. When Bigelow knocked Love's hand down and referred to him as "boy," Love grabbed Bigelow and began chocking him. On these facts, it was not unreasonable for the Commission to deem Love the aggressor and impose a three-day suspension.
 
 
 11
 The "boy" remark and the derogatory flier incident are also insufficient to sustain Title VII and Elliott-Larsen Act claims based on hostile work environment. In order to sustain a Title VII claim based on racial slurs in the work place, Love must demonstrate that the incidents of racial slurs were more than sporadic. Erebia v. Chrysler Plastic Products Corp., 772 F.2d 1250, 1254 (6th Cir.1985), cert. denied, 475 U.S. 1015 (1986). In the instant case, Love has recounted only two incidents in the course of three years. The district court believed that one of these incidents--the reference to Love as "boy"--was not clearly racially derogatory because workers at the Commission often used this term to refer to male co-workers. Furthermore, Love admits that he himself engaged in ethnic and sexual slurs on the job. This fact, of course, somewhat vitiates his Title VII claim based on racial slurs directed at him.
 
 
 12
 Finally, Love's write-ups for his tardiness do not provide a basis to support his Title VII and Elliott-Larsen Act claims. Love admits that he was in fact late when he received the reprimands for his attendance and acknowledges that white workers were reprimanded for their tardiness on the same dates he was. Accordingly, the district court properly granted summary judgment for Bigelow and the Commission on Love's Title VII and Elliott-Larsen Act claims.
 
 
 13
 Love's section 1981 claim also is not actionable.[2] In Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989), decided after the district court in the instant case granted summary judgment, the Supreme Court held that section 1981 applies only to the formation of employment contracts and to behavior which impedes enforcement of the contract through the legal process. Id. at 2374. The statute does not cover "postformation conduct by the employer relating to the terms and conditions of continuing employment." Id. Because Love's allegations of racial harassment fall into the latter category, his section 1981 claim is not actionable.
 
 
 14
 Love may maintain a section 1983 action against the Commission only if he demonstrates that Bigelow violated his federal rights pursuant to Commission policy or custom. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).[3] Love's claim fails for two reasons. First, as previously noted, Love's Title VII and section 1981 claims were properly dismissed and thus cannot serve as the bases for a section 1983 action. Second, Love has not established that it is the Commission's custom or policy to countenance the kinds of racial incidents he alleges in his complaint. The Commission has a written policy against discrimination based on race and national origin. Moreover, by admitting that he had suffered no racial insults other than being called "boy" by Bigelow and being handed a derogatory flier, Love hardly establishes a "custom" of racial harassment at the Commission. Accordingly, the district properly granted summary judgment for the Commission on Love's section 1983 claim.
 
 
 15
 Although the district court considered the merits of Love's intentional infliction of emotional distress claim, this pendent claim should have been dismissed once Love's federal claims were dismissed. Foster v. Walsh, 864 F.2d 416, 419 (6th Cir.1988) (per curiam).
 
 III.
 
 16
 For the above reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Elliott-Larsen Act provides in pertinent part:
 An employer shall not ... [f]ail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
 Mich.Comp.Laws Ann. Sec. 37.2202(1)(a).
 
 
 [2]
 42 U.S.C. Sec. 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [3]
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.